UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES S. COBB, 04-B-3479,

                  Petitioner,

                                       11-CV-0939(WMS)(MJR)

    -vs-                               REPORT AND RECOMMENDATION

MARK L. BRADT,

                  Respondent.
_____

## I.     Introduction

*Pro se* petitioner Charles S. Cobb ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his conviction in Monroe County Court (Hon. Richard A. Keenan) of, *inter alia*, second degree murder.  (Dkt. #38 at 7-14).[1] This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1). For the reasons that follow, I recommend that the petition be dismissed and that no certificate of appealability issue.

## II.    Factual Background and Procedural History

Petitioner was convicted following a jury trial of Murder in the Second Degree, N.Y. Penal L. § 125.25[1]; Criminal Possession of a Weapon in the Second Degree, N.Y. Penal L. § 265.03[2]; and Criminal Possession of a Weapon in the Third Degree, N.Y. Penal L. § 265.02[4] on December 3, 2004. He was sentenced to a term of 25 years to life and is currently incarcerated in Attica Correctional Facility.

---

[1]      The factual summary that follows derives from the parties' representations contained in the following submissions: Amended Petition dated June 15, 2015 ("Am. Pet." [Dkt. #38]), Respondents' Memorandum of Law in Opposition ("Resp't Mem" [Dkt. #17-2]) and attached exhibits ("Resp't Ex. __" [Dkt. #17-1]), and the transcripts of the underlying proceedings ("____Tr." [Dkt. #17-3, 17-4]) Except where necessary, no further citation to these documents will be made.

On April 30, 2010, the Appellate Division, Fourth Department, unanimously affirmed the judgment of conviction, and the New York Court of Appeals subsequently denied Petitioner's application to review that determination. *People v. Cobb*, 72 A.D.3d 1565 (4th Dept.); *lv. denied*, 15 N.Y.3d 803 (2010).

Petitioner then filed a petition for writ of habeas corpus in this Court, alleging the following grounds for relief: (1) neither the indictment nor the conviction were supported by legally sufficient evidence; (2) the verdict was against the weight of the evidence; (3) the trial court erred in allowing the 911 call to be presented to the jury; (4) the trial court's justification charge to the jury was improper; (5) Petitioner's trial counsel was ineffective; (6) the sentence was harsh and excessive; and (7) Petitioner's appellate counsel was ineffective. Am. Pet. ¶¶ 22(A)-(G). The Court previously dismissed the seventh ground of the Amended Petition earlier in these proceedings (Dkt. #13 at 3-4).

Petitioner's conviction arises out of the shooting death of Nicole Moore ("the victim") following a late-night road rage incident in Rochester, New York on February 23, 2004. Resp't Mem. at 2-6. The victim, her sister Lakiesha Moore ("Moore"), and a friend, Lakisha McKee ("McKee"), were involved in an altercation with Tiffany Montgomery ("Montgomery"), who had sideswiped the victim's vehicle. When both cars had stopped and pulled over, the victim exited her vehicle with a baseball bat and smashed the windshield and driver's side window of Montgomery's car, while Montgomery and her mother remained inside. *Id.* While McKee called 911, Petitioner and his friend Joseph Mullen ("Mullen") approached the scene in a white van. Mullen was an acquaintance of Montgomery's and had been headed to Montgomery's house. *Id.* As the incident escalated, the female occupants of the two cars continued to scream

obscenities at one another, while Mullen yelled out for the women to calm down and exchange insurance information. *Id.* According to McKee, Moore, and Mullen, Petitioner exited the white van, raised a gun and pointed it at the victim. The victim had the bat at her side, and Petitioner fired one or two shots, striking the victim in the arm. Montgomery and her mother left the scene in her vehicle, and Petitioner directed Mullen, at gunpoint, to also drive away.  Mullen promised he would not speak about the incident upon Petitioner's threats. *Id.*

An autopsy performed later in the day revealed that the victim died immediately from a ruptured carotid artery resulting from a single gunshot. *Id.*

At his trial, Petitioner testified that he had fired the gun once in response to the melee between the occupants of the two vehicles, but asserted that he shot the victim to protect himself because she had charged at him with the baseball bat. He denied threatening Mullen. In North Carolina, where Petitioner ultimately fled, he denied in a police interview that he knew about the incident in Rochester and the people involved. Resp't Mem. at 6-7.

On October 29, 2004, a jury found Petitioner guilty of second degree murder and weapon possession charges. He was sentenced to concurrent prison sentences with the longest being 25 years to life for the murder charge. Sentencing Tr. at 9-10.

On appeal, Petitioner argued that: (1) the indictment and verdict were not supported by legally sufficient evidence of intent to kill the victim; (2) the verdict was against the weight of the evidence; (3) the trial court erroneously admitted the 911 recording and erroneously denied Petitioner's motion to sequester the jury during

deliberations; (4) the justification charge to the jury was flawed, (5) Petitioner's trial counsel was ineffective, and (6) the sentence imposed was excessive. Resp't Exs. A-C.

The Appellate Division found the first, third, and fourth grounds unpreserved and alternatively, without merit. It further held that to the extent Petitioner's contention of ineffective assistance of counsel involved matters outside of the record, it must be raised by way of a post-conviction motion pursuant to N.Y. Crim. Proc. L. § 440.10, and that in other respects Petitioner received meaningful representation. Finally, the appellate court found that the verdict was not against the weight of the evidence, and that Petitioner's sentence was not unduly harsh or severe. *People v. Cobb*, 72 A.D.3d 1565 (4th Dept. 2010).

Petitioner sought leave to appeal only on the grounds of sufficiency of the evidence and the introduction of the 911 tape and transcript. Resp't Ex. E. The Court of Appeals denied leave on August 3, 2010. 15 N.Y.3d 803.

This federal habeas petition followed. For the reasons that follow, I recommend that Petitioner's request for a writ of habeas corpus be denied and the petition be dismissed.

## III.    Discussion

### A.    Standard Applicable to Habeas Review of State-Court Adjudications

A district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Errors of state law are thus not subject to federal habeas review. *E.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions."). Federal habeas review of state court decisions is governed by the standard set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, which provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

A state court decision is "contrary to" established federal law if the state court arrives at a conclusion on a question of law that is opposite to that reached by the Supreme Court, or if the state court adjudicates essentially the same facts as a prior Supreme Court case but reaches an opposite result. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (citations omitted). A state court decision is an "unreasonable application" of established federal law if (1) the state court correctly identifies the relevant legal principle but unreasonably applies it to a set of facts; (2) the state court unreasonably extends an existing principle to a new context where it should not apply; or (3) the state court refuses to extend an existing principle to a context where it should be extended. *Williams*, 529 U.S. at 407.  Any factual determination made by the state court must is presumed correct unless the habeas petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**B.    General Legal Principles**

**1.    Exhaustion Requirement and Procedural Bar**

It is well-settled that a federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). In order to exhaust a federal constitutional claim for the purposes of federal habeas review, the substance of the federal claim, both legal and factual, must be apparent from the petitioner's presentation to the state court. *See Picard*, 404 U.S. at 275–76; *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981). "The claim presented to the state court, in other words, must be the 'substantial equivalent' of the claim raised in the federal habeas petition." *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) (quoting *Strogov v. Att'y Gen. of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999) (in turn quoting *Picard*, 404 U.S. at 278 (1971)). Generally, this involves the completion of one full round of appellate review, meaning that the highest state court so empowered must have been presented with the opportunity to consider the petitioner's federal constitutional claim. *See Picard*, 404 U.S. at 275–76.

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (quoting *Harris v. Reed*, 489 U.S. 255, 263, n. 9 (1989) (other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." *Id.* When a petitioner no longer has "remedies available" in the state courts, because he is procedurally barred

by state law from raising such claims, the habeas court may deem the claims exhausted but procedurally defaulted. *Id.* at 120–21 (quoting *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)).

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). *See Wainwright v. Sykes*, 433 U.S. 72, 87–91(1977); *see also Sawyer v. Whitley*, 505 U.S. 333 (1992).

### 2.    Adequate and Independent State Grounds Doctrine

The Supreme Court has also made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations and internal quotations omitted).

### C.    Analysis of Petitioner's Claims

Respondent asserts that only two grounds of the Amended Petition have been properly exhausted and that the remaining four are unexhausted but procedurally barred from review by this Court. Respondent argues that, in any event, none of the claims warrant habeas relief. Resp't Mem. at 16-33.

AEDPA's amendments to the federal habeas statute permit a district court to deny a habeas petition containing unexhausted claims. *See* 28 U.S.C. § 2254(b)(2). Because none of Petitioner's habeas claims have merit, regardless of the standard of review employed, I recommend, in the interest of judicial economy, proceeding to consider the merits of each claim without lengthy discussion of the more complex exhaustion and procedural default issues.

### 1.      Ground One: Legal Sufficiency

Petitioner first contends that "both the indictment and proof at trial were insufficient to demonstrate that Charles Cobb acted to intentionally kill Nicole Moore, but rather one close range shot to the arm was meant to halt the assault in progress." Am. Pet. ¶ 22(A).

The Appellate Division found that Petitioner failed to preserve this contention for review because "his motion to dismiss was not specifically directed at that alleged insufficiency," and, in any event, his contention was without merit.  *Cobb*, 72 A.D.3d at 1565. As such, his claim is procedurally barred. *See Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996) (If a state court has found that a claim is unpreserved for appellate review and then ruled "in any event" on the merits, this determination constitutes an adequate and independent procedural bar.) In alternatively rejecting this argument on the merits, the Appellate Division went on to hold:

> The [i]ntent to kill may be inferred from defendant's conduct as well as the circumstances surrounding the crime . . . . The evidence, viewed in the light most favorable to the People . . . establishes that defendant pointed a gun at the victim from less than 20 feet away, aimed at a part of the victim's body where death producing injuries were apt to occur, and fired twice.

*Cobb*, 72 A.D.3d at 1565 (citations and quotations omitted).

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt." *In re Winship*, 397 U.S. 358, 364 (1970). A habeas court reviewing a claim for insufficiency of the evidence must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). Thus, "a petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

A habeas court reviewing a sufficiency of the evidence claim first looks to state law to determine the elements of the crime for the petitioner was convicted. *E.g., Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (citation omitted).   Under New York law, a person is guilty of second degree murder in violation of  N.Y. Penal Law § 125.25[1] if he causes the death of another person intending to cause the death of that person or someone else.   N.Y. Penal L. § 125.25[1].   A person acts intentionally with respect to a result "when his conscious objective is to cause such result or to engage in such conduct." N.Y. Penal L. § 15.05[1]. As noted in the Appellate Division's decision, intent may be inferred from "the natural and necessary and probable consequences" of one's actions. *People v. Getch*, 50 N.Y.2d 456, 465 (1980).

The three prosecution witnesses in this case each testified that Petitioner pointed a gun at the victim from a distance of approximately 15-20 feet and shot her in the

upper body. Intent may be properly inferred from such circumstances.  *See Cabrera v. New York*, No. 10-CV-4440, 2013 WL 5205613, at *6 (E.D.N.Y. Sept. 12, 2013) (collecting cases holding that there was sufficient evidence of intent to kill where defendant pointed a gun directly toward the victim and fired from relatively close range). Likewise, the same witnesses testified consistently that the victim had the bat "down" and "to her side" at the time she was shot. Trial Tr. 260, 324, 421. Viewing this evidence in the light most favorable to the prosecution, a rational jury could have found that Petitioner acted with the intent to kill the victim.

To the extent Petitioner seeks to challenge the sufficiency of the evidence presented to the grand jury, *see* Am. Pet. ¶ 22(A), such a claim is not cognizable on habeas review. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (finding that "claims concerning a state grand jury proceeding are . . .  foreclosed in a collateral attack brought in a federal court"); *see also Fulton v. Greene*, No. 05-CV-6314, 2009 WL 3733046 (W.D.N.Y. Nov. 5, 2009) ("It is well-settled that any errors in state grand jury proceedings involving sufficiency of grand jury evidence, use of misleading and prejudicial evidence, and instructions given to the grand jury do not entitle a petitioner to habeas relief."); *Whaley v. Graham*, No. 06-CV-3843, 2008 WL 4693318 (E.D.N.Y. Oct. 15, 2008) ("[T]he form of a grand jury indictment is statutorily created . . . and such alleged defects in a state grand jury proceeding cannot provide grounds for habeas relief.").

Accordingly, I recommend that Ground One be dismissed.

## 2.      Ground Two: Weight of the Evidence

Likewise, Petitioner's claim that the verdict was against the weight of the evidence, *see* Am. Pet. ¶ 22(B),[2] does not assert a federal claim as required by 28 U.S.C. § 2254(a). Rather, he raises an error of state law, for which habeas review is not available. *McKinnon v. Sup't, Great Meadow Corr. Facility*, 422 Fed. Appx. 69, 75 (2d Cir. 2011) (summary order) (collecting cases and noting that "the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); *see also Soto v. Walsh*, No. 08 CIV. 5283, 2008 WL 5233013, at *1 (S.D.N.Y. Dec. 15, 2008) ("unlike the Appellate Division . . . federal habeas courts have no power to review the weight of the evidence.").

As Petitioner has not raised a constitutional claim in Ground Two, I recommend that it be dismissed.

## 3.      Ground Three: Evidentiary Rulings

In Ground Three, Petitioner challenges the admissibility of the recording and transcript of the 911 call made during the shooting. Am. Pet. ¶ 22(C).  Specifically, he contends that the 911 call was "irrelevant," and the transcript contained "gratuitous parenthetical comments added by the 911 operator," including notations of "screaming" and "crying." *Id.*

The appellate court found that Petitioner's argument that the admission of the 911 recording constituted impermissible bolstering was unpreserved, and in any event, lacked merit. It further held that the state court did not abuse its discretion in denying his request to redact certain portions of the phone call. *Cobb*, 72 A.D.3d at 1565.

---

[2]      The Appellate Division rejected Petitioner's contention on the merits.  *Cobb*, 72 A.D.3d at 1565.

It is well-settled that challenges to a state court's evidentiary rulings are generally not cognizable on habeas review. *Estelle*, 502 U.S. at 67–68. An evidentiary error raises a question of constitutional dimension and becomes a proper subject for habeas review only where the petitioner can show that "the introduction of the challenged evidence, [or] the jury instruction as to its use, 'so infused the trial with unfairness as to deny due process of law.'" *Id.* at 75 (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)); *see also Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998), *overruled on other grounds by Perry v. New Hampshire*, —— U.S. ——, 132 S. Ct. 716 (2012).

Under New York law, the 911 recording of the crime in progress was properly admitted. *See People v. Dann*, 17 A.D.3d 1152 (4th Dept. 2005) (911 tape was properly admitted pursuant to present sense impression exception to hearsay rule; availability of victim at trial did not preclude admissibility of tape under that hearsay exception, nor did admission of tape improperly bolster her testimony). Assuming, *arguendo*, the admission of the recording was erroneous, any error would be harmless as it was not crucial to the conviction. The call, made by McKee, did not identify the shooter, but merely corroborated the statements of the other two witnesses present at the scene. *See Dunnigan*, 137 F.3d at 125 ("For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.") (internal quotations and citation omitted).

The trial court's decision to publish the transcript of the 911 call to aid the jury was also not improper under state law. The court clearly instructed the jury that the

transcript was distributed only to assist in listing to the actual recording, and emphasized that the transcripts were not evidence. Trial Tr. 236-37; s*ee People v. Gandy*, 152 A.D.2d 909 (4th Dept. 1989) ("The court did not err in admitting the tape and a transcript of a 911 call  placed by the victim  . . .  during the incident. After the tape was played and the transcript was submitted to the jury, the court cautioned the jury that the transcript was merely an aid, that they were not bound to accept it, and that they must decide what was said on the tape. This was in all respects proper . . . The determination of whether to admit a tape recording is left to the discretion of the Trial Judge . . . We find no abuse of discretion in this case.") (citations omitted); *see also Shodunke v. Cty. of Queens*, No. 07-CV-329, 2009 WL 5172895, at *9 (E.D.N.Y. Dec. 30, 2009) ("Petitioner asserts that he was denied a fair trial by several of the trial court's evidentiary rulings, including . . . the decision to allow transcripts to be furnished as an aid to the jury . . . . Each of the rulings, however, was discretionary and involves pure questions of state law not cognizable on habeas . . . .  In any event, the record shows that . . . the transcripts were not admitted into evidence or sent into the jury room but used solely as an aid[.]") Because Petitioner has not demonstrated an error under state evidentiary law, his constitutional claim necessarily fails. *See, e.g., Brooks v. Artuz*, 97 Civ. 3300, 2000 WL 1532918 at *6, 9 (S.D.N.Y. Oct. 17, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude).

In addition to being partially unexhausted and procedurally barred, Petitioner's evidentiary challenges do not implicate a constitutional right.  Accordingly, I recommend that Ground Three be dismissed.

### 4.      Ground Four: Jury Charges

In support of his fourth ground for relief, Petitioner contends that that jury charge on justification was incomplete and misleading, and that the jury should have been given a "temporary innocent possession" charge. Am. Pet. ¶ 22(D)(I)-(II).

The Appellate Division found that Petitioner had waived appellate review on the alleged erroneous jury charge because the trial court issued curative instructions upon defense counsel's request, and, in any event, the trial court's instructions were correct under the law. *Cobb*, 72 A.D.3d at 1565. It further rejected Petitioner's argument that he was entitled to a temporary and lawful possession of a weapon jury instruction. *Id.*

Simply put, Petitioner's allegation that the justification charge was defective is contradicted by the record. The charge read by the trial court mirrored the pattern jury instructions in effect at the time of Petitioner's trial and was correct as delivered. *Compare* Trial Tr. 632-35 *with* CJI2d[NY] Penal L. § 35.15; *see People v. Bernard*, 222 A.D.2d 599 (2d Dept. 1995) (upholding the justification charge that followed pattern instructions "nearly verbatim").  Defense counsel objected to the charge, requesting that certain language that had been already read be repeated nonetheless. The trial court agreed to repeat the justification language in a supplemental charge, after which defense counsel raised no further objection. Trial Tr. 652-54. This claim is therefore factually and legally baseless.

Petitioner's claim that he was entitled to a temporary innocent possession charge is also without merit. To trigger the right to a charge on temporary and lawful possession, "there must be proof in the record showing a legal excuse for having the weapon in defendant's possession as well as facts tending to establish that, once

possession has been obtained, the weapon had not been used in a dangerous manner." *People v. Banks*, 76 N.Y.2d 799, 801 (1990). Even accepting Petitioner's version of events as true, that he found a gun in the glovebox of his friend's van and used it to shoot the victim in the arm so as to stop her from assaulting two women with a baseball bat, these circumstances do not warrant a temporary possession charge. Trial Tr. 492-498. "[A] person either possesses a weapon lawfully or he does not and he may not avoid the criminal charge by claiming that he possessed the weapon for his protection. Justification may excuse otherwise unlawful use of the weapon but it is difficult to imagine circumstances where it could excuse unlawful possession of it." *People v. Almodovar*, 62 N.Y.2d 126, 130 (1984). In any event, the jury was given a permissive presumption in regard to possession of a loaded weapon, and the trial court judge delineated the four elements of criminal possession of a weapon in the second degree and instructed the jury that each of the elements must be proven beyond a reasonable doubt. Trial Tr. 638-40. In light of the record and the jury charge as a whole, the trial court did not err by refusing to give Petitioner's requested jury instructions and therefore there is no constitutional infirmity arising out of this claim. *See Brooks*, 2000 WL 1532918 at *6, 9.

It is recommended that Ground Four of the Amended Petition relating to the jury instructions be dismissed.

### 5.    Ground Five: Counsel-Related Claims

Petitioner claims, as he did on appeal, that the trial court erred in denying his request for substitution of counsel. Am. Pet. ¶ 22(E).

The appellate court held, "that contention is not properly before us inasmuch as the record establishes that defendant abandoned that request." *Cobb*, 72 A.D.3d at 1567.

Petitioner initially requested that the court replace his appointed attorney prior to trial, and counsel also asked to be removed. Oct. 1, 2004 Tr. at 8-11.  The trial court denied Petitioner's request and reserved decision on counsel's motion. *Id.* At the following appearance, however, Petitioner advised the court that he wished for counsel to continue representing him. Oct. 8, 2004 Tr. at 2-4.  Petitioner therefore abandoned his challenge to substitute counsel rendering his present claim procedurally barred. *See Bailey v. Ercole*, No. 06 CIV. 5811, 2007 WL 4707738, at *8 (S.D.N.Y. Aug. 17, 2007) (Appellate Division holding that defendant abandoned claim was an independent state law ground).  Even if Petitioner's claim were not procedurally barred, his underlying allegation that defense counsel failed to conduct a proper investigation is without merit. Am. Pet. ¶ 22(E).

The standard to be used in determining the effectiveness of counsel is well-established. *See Strickland v. Washington*, 466 U.S. 668 (1984). "The benchmark for judgment of any claim of ineffectiveness must be whether counsel's conduct so undermined the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Judicial scrutiny of counsel's performance must be highly deferential, and reviewing courts should indulge a strong presumption that counsel comported himself properly. *Id.* at 689. Finally, the deficiencies alleged by the defendant must have resulted in prejudice; that is, the

defendant must show that "but for" counsel's ineffectiveness there would have been a reasonable probability of a more favorable outcome. *Id.* at 694.

Petitioner claimed counsel's ineffectiveness to the trial court on the basis of his attorney's failure to hire an investigator and that generally, his "experience [was] . . . not up to standards." Oct. 1, 2004 Tr. at 3-4.  In response, defense counsel indicated that he had discussed the strengths and weaknesses of the case with his client, as well as potential defenses. Specifically, he told the trial court that "there was no need to hire an investigator right away because we assumed [Petitioner's] family would be able to get in touch with the appropriate witnesses. That's why I have not hired an investigator. As the Court is aware, I have to show a need for that and at this point there wasn't a need for that service." *Id.* at 4-5.   Defense counsel's remarks on the record undermine Petitioner's claim of ineffective assistance, as counsel's decision was clearly one of trial strategy and therefore is entitled to deference under *Strickland*. "Counsel is assumed to have properly investigated the matter given that '[w]e abide by a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and 'there are countless ways to provide effective assistance in any given case.'" *DeFayette v. Sup't*, No. 05-CV-722, 2008 WL 755822, at *14 (N.D.N.Y. Mar. 19, 2008) (quoting *Vadas v. United States*, 527 F.3d 16, 22 (2d Cir. 2007) (internal quotations omitted); *see generally Cuevas v. Henderson*, 801 F.2d 586, 590 (2d Cir. 1986) (second-guessing counsel's strategy does not satisfy deficient performance requirement), *cert. denied*, 480 U.S. 908 (1987).

Moreover, Petitioner does not identify what specifically the investigator would have been retained to do and how the outcome of such private investigation would have

changed the outcome of his case. *See Strickland*, 466 U.S. at 694 (to satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; the probability must "undermine confidence in the outcome.")

His related argument that counsel "failed to expend any effort in setting forth the defense justification," *see* Am. Pet. ¶ 22(E), is plainly belied by the present record and should be dismissed as meritless. *See, e.g.*, *Davis v. Sup't Clinton Corr. Facility*, No. 10-CV-0392, 2011 WL 3420853, at *6 (W.D.N.Y. Aug. 4, 2011) (a federal court may not grant habeas relief based upon unsubstantiated conclusions, opinions, or speculation) (citing *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support")).  To the contrary, the record indicates that Petitioner received effective assistance of counsel overall, including his assertion of the justification defense in this case. Counsel filed and argued the appropriate pretrial motions, limited the scope of the prosecution's cross-examination of Petitioner's criminal history, moved for material witness orders when Montgomery and her mother refused to appear in court, successfully argued for dismissal of the second count of the indictment alleging depraved indifference murder, and zealously argued that the prosecution witnesses (McKee, Moore, and Mullen) were biased and that the shooting was justified to thwart the ongoing road rage incident instigated by the victim. Oct. 1, 2004 Tr. at 4, 9-10; Oct. 5, 2004 Tr. at 10-18; Oct. 22, 2004 Tr. at 18-20; Trial Tr. 175-85, 208-13, 220-24, 238-45, 284-306, 312-13, 338-59, 381-87, 424-40, 449-50, 469-71, 481,  527-28, 534-37, 562, 570-85. *See Jeremiah v.*

*Artuz*, 181 F. Supp. 2d 194, 204 (E.D.N.Y. 2002) (rejecting ineffectiveness claim in light of counsel's overall performance).

Accordingly, the Court recommends that Ground Five be dismissed.

### 6.    Ground Six: Challenge to Sentence

Petitioner contends that he "should not have been sentenced to the maximum sentence allowed by law," thereby acknowledging that his sentence fell within the statutory range. Am. Pet. ¶ 22(F); *see* N.Y. Penal L. §§ 70.00, 125.25. As such, he has not set forth an issue appropriate for habeas review. *See White v. Keane*, 965 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.") (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)). A petitioner's assertion that a sentencing judge abused his or her discretion in sentencing is not a cognizable federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir. 1977) (stating that no cognizable federal claim is raised by means of a claim that the sentencing judge abused his sentencing discretion) (citing *Townsend v. Burke*, 334 U.S. 736, 741  (1948) [("The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")]. We thus are unable to grant relief on this ground as well.")).

Here, the sentence imposed by the trial court was within the statutory range permitted under New York law. Therefore, I recommend that Ground Six be dismissed.

### IV.    Conclusion

For all of the foregoing reasons, it is recommended that the Amended Petition be dismissed in its entirety and no certificate of appealability should issue. *See* 28 U.S.C. § 2253(c).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988.

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with**

**the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to Petitioner and Respondent.

**IT IS SO ORDERED.**

/s/ Michael J. Roemer
MICHAEL J. ROEMER
United States Magistrate Judge

Dated: January 22, 2016
Buffalo, New York